**UNITED STATES of America,
Plaintiff,
v.
Phillip ARCURI and Alfred John Cimei,
Defendants.**

**No. 66 CR 454.**

United States District Court
E. D. New York.

March 27, 1968.

---

---

Joseph P. Hoey, U. S. Atty. for Eastern District of New York, Brooklyn, N. Y., for plaintiff; Donald F. McCaffery, Asst. U. S. Atty., of counsel.

Archibald Palmer, New York City, for defendant Arcuri.

David T. Berman, Brooklyn, N. Y., for defendant Cimei.

## MEMORANDUM AND ORDER

WEINSTEIN, District Judge.

Defendants moved during trial and after being found guilty to dismiss the indictment on the ground that it was based purely on hearsay. For the reasons indicated below their motions are denied.

At the trial, the main evidence against the defendants was the testimony of a group of Special Agents of the Treasury Department. They were on the scene when defendants passed a large number of counterfeit bills.

Despite the fact that more than a half dozen Special Agents participated in the investigation and arrest, a government agent without any direct knowledge of the events was the only witness who testified before the grand jury. He explained that all the other agents were busy when the indictment was sought. In his testimony before the grand jury he synthesized the reports of those agents who had observed the relevant events. But he spoke as would one who had seen the events he described and a grand jury would not have known that this witness's knowledge was secondhand.

The government contends that the practice of relying on hearsay was authorized by United States v. Costello, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956), aff'g 221 F.2d 668 (2d Cir. 1955). Costello held that an indictment was not invalid merely because it was based upon hearsay. Subsequent cases have approved indictments based on hearsay alone even though substantial direct evidence was readily available for presentation to the grand jury. United States v. Andrews, 381 F.2d 377, 378 (2d Cir. 1967); United States v. Payton, 363 F. 2d 996, 998–999 (2d Cir. 1966) (fact that grand jury was not aware that witness was describing information received from another was not sufficient basis for reversal); United States v. Heap, 345 F.2d 170, 171–172 (2d Cir. 1965). In a burst of exuberance at the release from pre-Costello restrictions, federal prosecutors appear to have made substantial use of the technique typified by the instant case.

This practice has come under substantial attack in this circuit. As Judge Waterman put it:

"excessive use of hearsay in the presentation of government cases to grand juries tends to destroy the historical

function of grand juries in assessing the likelihood of prosecutorial success and tends to destroy the protection from unwarranted prosecutions that grand juries are supposed to afford to the innocent. Hearsay evidence should only be used when direct testimony is unavailable or when it is demonstrably inconvenient to summon witnesses able to testify to facts from personal knowledge." United States v. Umans, 368 F.2d 725, 730 (2d Cir. 1966), cert. granted 386 U.S. 940, 87 S.Ct. 975, 17 L.Ed.2d 872, writ of certiorari dismissed as improvidently granted 389 U.S. 80, 88 S.Ct. 253, 19 L.Ed.2d 255 (1967). See also United States v. Beltram, 388 F.2d 449, 451 (2d Cir. 1967,) (Medina, J. dissenting) ("consequence of this procedure is to make it impossible for the defense, by demanding production of the grand jury minutes at the trial, to use contradictions and misstatements of the principal witness under oath to impeach him"); United States v. Payton, 363 F.2d 996, 999–1001 (2d Cir. 1966) (Friendly, J., dissenting) (relying solely on hearsay before the grand jury without notifying the grand jury of this fact "makes a mockery of the Fifth Amendment's guarantee"); United States v. Tane, 329 F.2d 848, 853–854 (2d Cir. 1964) (upholding dismissal of indictment based solely on inadmissible evidence); United States v. Borelli, 336 F. 2d 376, 391 (2d Cir. 1964), cert. denied sub nom. Cinquegrano v. United States, 379 U.S. 960, 85 S.Ct. 647, 13 L.Ed.2d 555 (1965) ("The Government ought not be allowed, by having its principle witness speak to the grand jury through the voice of another, to deprive a defendant of his right to impeach by contradiction.").

■ There is no reason to believe that the Supreme Court in *Costello* intended to encourage the practice before grand juries of deliberately relying solely on the testimony of witnesses without any personal knowledge when better evidence is readily at hand. Rather, *Costello* seems to have been designed to avoid technical failures of indictments because hearsay or other inadmissible evidence was used either inadvertently or because nothing more probative was immediately available.

■ The practice—as in the instant case—of relying on hearsay rather than upon the testimony of eye-witnesses is pernicious for two reasons. First, it habituates the grand jury to rely upon "evidence" which appears smooth, well integrated and consistent in all respects. Particularly because neither cross-examinations nor defense witnesses are available to them, grand jurors do not hear cases with the rough edges that result from the often halting, inconsistent and incomplete testimony of honest observers of events. Thus, they are unable to distinguish between prosecutions which are strong and those which are relatively weak. All cases are presented in an equally homogenized form. A grand jury so conditioned is unable to adequately serve its function as a screening agency. It cannot exercise its judgment in refusing to indict in weak cases where, technically, a prima facie case may have been made out. It is, moreover, unlikely to demand additional evidence.

The second reason the practice is undesirable is that it prevents the defendant from utilizing grand jury testimony in cross-examining witnesses who will testify at the trial. Since no witness the government intends to use is called before the grand jury, it avails a defendant little to have the grand jury testimony furnished to him at the trial. Dennis v. United States, 384 U.S. 855, 868–875, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966) (where interest in secrecy is minimal and grand jury minutes would be helpful, it is reversible error not to order them disclosed); United States v. Youngblood, 379 F.2d 365, 367, 370 (2d Cir. 1967) (Second Circuit rule is that upon request "defendant be allowed to examine the grand jury testimony of those witnesses who testify at his trial

without * * * [a showing of] any particularized need for this material").

When a government witness testifies, and defense counsel seeks his grand jury testimony for use in cross-examination, he is met with the answer that the witness did not testify before the grand jury. Taken with the concurrent prosecution tactic of avoiding preliminary hearings (see Sciortino v. Zampano, 385 F.2d 132 (2d Cir. 1967); United States ex rel. Wheeler v. Flood, 269 F.Supp. 194 (E.D.N.Y.1967)), the net effect is to cut the defendant off from material which should be available to him as a partial substitute for discovery proceedings. See, e. g., United States v. Heap, 345 F. 2d 170 (2d Cir. 1965) (preliminary hearing adjourned while indictment based upon hearsay obtained).

We are informed that the practice challenged in the present case no longer represents the policy of the United States Attorney in this district and that witnesses with personal knowledge are now relied upon wherever possible. The Court is thus faced with the problem of what remedy, if any, will be fair to both prosecution and defense in this and future cases.

■ In deciding whether to grant these defendants relief, the pivotal consideration is whether they were prejudiced. Whatever the possible adverse effect on defendants generally of the practice complained of, the trial of this case indicates that these defendants were not adversely affected. Based upon the available evidence, it is not conceivable that a grand jury would have refused to indict. The reports of the government witnesses—supplied to defendants—were so detailed as to afford the equivalent of grand jury testimony for impeachment purposes. Since there has been a finding of guilt by a jury after a full trial, since no prejudice to defendant has been shown, and since the United States Attorney may have been justified in assuming that the Costello case and its progeny gave him carte blanche to utilize hearsay before the grand jury, no purpose would be served in now setting aside ·the convictions in this case.

That the present case is inappropriate for the drastic action of dismissal of the indictment does not mean, however, that the Court is without power to act. We may properly follow what has now become accepted practice by making our decision prospective. See generally Schaefer, The Control of "Sunbursts": Techniques of Prospective Overruling, 42 N.Y.U.L.Rev. 631 (1967); Traynor, Conflict of Laws in Time: The Sweep of New Rules in Criminal Law, 1967 Duke Law Review 713. Since, under Costello, we are dealing not with a constitutional requirement, but with the federal court's control over its own officers, our position is much like that of a state court modifying state policy. As Justice Cardozo pointed out in the leading case dealing with prospective overruling:

"A state in defining the limits of adherence to precedent may make a choice for itself between the principle of forward operation and that of relation backward. It may say the decisions * * * though later overruled are law none the less for intermediate transactions." Great Northern Railroad Company v. Sunburst Oil and Refining Company, 287 U.S. 358, 364, 53 S.Ct. 145, 148, 77 L.Ed. 360 (1932).

■ The courts need not apply a rule to the case in which it is first enunciated. United States v. Youngblood, 379 F.2d 365 (2d Cir. 1967) (conviction affirmed but rule on disclosure of grand jury minutes to be applied to future cases). Cf. James v. United States, 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961) (applying rule prospectively to protect defendant); Schaefer, supra, 639.

The recent decision of the Court of Appeals for this circuit in United States v. Beltram, 388 F.2d 449 (2d Cir. 1967), might be read to suggest that a prospective change in the law resulted from United States v. Umans, 368 F.2d 725 (2d Cir. 1966)—decided October 27, 1966. The majority in Beltram, after pointing out that the Court of Appeals had never held that an indictment must be dis-

missed if it was based wholly on hearsay, went on to declare: "The indictment in the present case was returned before the issuance of the decision in Umans." 388 F.2d 449, 451 (2d Cir. 1967). This comment would have been unnecessary unless the date of decision in *Umans* had some significance. It seems unlikely, however, that the Court of Appeals intended its decision either in *Umans* or in *Beltram* to give notice of a new prospective rule. The matter, involving as it does the validity of hundreds of indictments, requires a precise and plain warning to prosecutors. Thus, read together, *Umans* and *Beltram* appear to mean only that indictments handed down after October 27, 1966 should be very closely scrutinized to determine whether there was actual prejudice to the defendant.

The practice revealed in the case before us, where the indictment was handed down some two months after the decision in *Umans*, suggests the need for a stronger rule and more uniformly applied sanctions to enforce it. Our purpose—deterrence of further use of the practice employed in the instant case—is adequately served by now announcing a more precise rule for future cases.

■ Accordingly, a timely motion to dismiss an indictment handed down after March 31 of 1968 will be granted without a showing of prejudice to the defendant if it is clear that hearsay alone was deliberately relied upon when better evidence was readily available for presentation to the grand jury. Cf. United States v. Tane, 329 F.2d 848, 853 (2d Cir. 1964) ("motion to dismiss or quash an indictment because of the absence or incompetency of evidence before the Grand Jury is addressed to the discretion of the trial court"). Indictments handed down before March 31, 1968 and properly challenged by defendants will be individually considered to determine prejudice.

There is no basis for the additional motion for an order setting aside the verdict of the jury on the ground of insufficiency of evidence.

The motions are denied.

So ordered.