**UNITED STATES of America, Appellee,**

v.

**Harold OLSEN et al., Appellants.**

**No. 176, Docket 71–1385.**

United States Court of Appeals, Second Circuit.

Argued Oct. 7, 1971.

Decided Jan. 5, 1972.

**614**

Harry C. Batchelder, Jr., New York City (Thomas R. Esposito, New York City, of counsel), for appellant Olsen.

Michael W. Mitchell, New York City (Skadden, Arps, Slate, Meagher & Flom, New York City, Stuart L. Shapiro, New York City, of counsel), for appellant Edward Thomas Leach.

John S. Martin, Jr., New York City, for appellant William Robert Leach.

William E. Dertinger, Asst. U. S. Atty. (Robert A. Morse, U. S. Atty., E. D. N. Y., David G. Trager and Raymond J. Dearie, Asst. U. S. Attys., of counsel), for appellee.

Before WATERMAN and SMITH, Circuit Judges, and ZAMPANO,* District Judge.

J. JOSEPH SMITH, Circuit Judge:

This appeal focuses solely on the alleged denial of various constitutional protections, infecting appellants' arrest, identification, indictment and trial, without contesting their guilt in fact. A three-count indictment charged Harold Olsen with unlawfully attempting to pass a counterfeit ten dollar note in violation of 18 U.S.C. §§ 472 and 2, William Leach with violation of the same sections for successfully passing one counterfeit ten dollar note, and Edward Leach with possession and concealment of two counterfeit ten dollar notes in violation of 18 U.S.C. § 472. Motions to suppress the counterfeit notes and the identification testimony and to suppress certain post-arrest admissions by appellants were denied. The United States District Court for the Eastern District of New York, John F. Dooling, Jr., *Judge*, sitting without a jury, entered judgments of conviction on all three counts, based upon testimony heard at the suppression hearing, considered by agreement on the case in chief. Subsequently a motion to quash the indictment as unsupported by sufficient evidence was denied. The sentence of Edward Leach was suspended, with probation for three years. The other two appellants received suspended sentences and five years probation. We find error in the failure to provide separate counsel for appellant Olsen and reverse for new trial as to him. We affirm the convictions of William and Edward Leach.

The evidence adduced at the suppression hearing established the following chain of events. On the morning of August 6, 1970 one Alberti, proprietor of a Brooklyn bar and grill, noticed three men conferring across the street, one of whom shortly entered the bar seeking to change what Alberti recognized to be a counterfeit note. Alberti rejected the note and called the police. Intercepting a patrolman Ross, who had been alerted to the attempted crime by radio, Alberti pointed out appellants, indicating that Olsen had been the one to enter the bar. Officer Ross observed the three appellants counting money (a point Alberti was unable to corroborate), recognized the Leaches as men with minor arrest records, and together with his partner arrested them. Officer Ross proceeded immediately to search Olsen; finding nothing, he searched William Leach, also without success, finally discovering two counterfeit notes on the person of Edward Leach. Consigning appellants to his patrol car, Officer Ross scoured neighborhood merchants for additional evidence, turning up another counterfeit note at Coyne's French Dry Cleaners. The clerk at Coyne's, one Borowitz, was brought to the station house where, looking through a one-way mirror, he identified all three appellants, naming William Leach as the passer of the counterfeit note. Later, all the appellants having been warned of their rights, Edward Leach, in the presence of his co-defend-

---

* United States District Judge for the District of Connecticut, sitting by designation.

ants, related to a Secret Service Agent, one Derkasch, that they had received the counterfeit notes from a "fence" in exchange for stolen phonograph records.

■ The sole witness before the grand jury was Agent Derkasch, who testified as to the substance of his interview with Officer Ross, Alberti and Borowitz, to his own finding that the notes were counterfeit, and to the admissions of Edward Leach as to the source of the notes. Even absent the nonhearsay evidence, the district court was justified in the conclusion that the high order of hearsay evidence provided was more than adequate to support all counts of the indictment. Costello v. United States, 350 U.S. 359, 363–364, 76 S.Ct. 406, 100 L.Ed. 397 (1956); United States v. Umans, 368 F.2d 725, 730 (2d Cir. 1966). No appellant has shown that the hearsay nature of the agent's testimony was concealed from the grand jury or any probability that eye-witness testimony would have precluded their indictment. United States v. Leibowitz, 420 F.2d 39, 42 (2d Cir. 1969). Conclusive of the indictment's validity, we note that it did not rest solely on hearsay testimony; Agent Derkasch testified as to his own interviews with appellants and his own examination of the counterfeit notes.

■ While it is true that Agent Derkasch testified incorrectly to the grand jury that Officer Ross had found counterfeit notes on William Leach, he related accurately Borowitz' statement that William Leach had actually passed a counterfeit note at Coyne's French Dry Cleaners. Since the indictment charged William Leach only with pass-

ing a counterfeit note, not with possession, the grand jury plainly was not misled by the erroneous testimony. Similarly meritless is Edward Leach's claim that there was no evidence at all before the grand jury to support his indictment. Our examination of the grand jury minutes makes it appear likely that an error in transcription conceals a reference by Agent Derkasch to Officer Ross' discovery of the counterfeit notes. Both appellants were correctly informed of the charges against them, and neither may be prosecuted again for the same offense. No "substantial right" of either appellant has been prejudiced by the grand jury proceeding. Berger v. United States, 295 U.S. 78, 82, 55 S.Ct. 629, 79 L.Ed. 1314 (1934).

■ Edward and William Leach both contend that Officer Ross lacked probable cause to arrest them, rendering the incidental search for counterfeit notes, and their seizure from Edward Lesch,[1] unlawful. However, the information available to Officer Ross at the moment he made the arrests,[2] if taken cumulatively, gave him a reasonable basis to believe that both appellants had participated in a crime. Beck v. State of Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). He knew that both men had been with Olsen before his futile attempt to pass a counterfeit note to Alberti, that they had awaited the outcome of this attempt, and then had rejoined Olsen. He knew that both men had minor arrest records, albeit for different crimes than the one of which he suspected them. Most tellingly in this context he observed the three appellants counting and exchanging money as he approached them.[3] Each of these facts by

---

1. We reject the contention of William Leach that, given probable cause to make the arrests, and having found counterfeit notes in the possession of Edward Leach, Officer Ross was compelled to resist all logical inferences of William Leach's complicity in the crime, and to release him, simply because no counterfeit notes were found on his person.

2. We view the issue in the worst possible light to the government, namely that

all three appellants were under arrest, as Officer Ross himself characterized it, from the moment the police officers detained them. The district court found that the officers had acted with probable cause whether their initial conduct was labeled investigatory detention or outright arrest, but considered the matter a close question.

3. We accept the district court's finding that there was no basic contradiction in

itself would have been consistent with innocent behavior. No one by itself would have constituted probable cause to make the arrests. *See, e. g.*, United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948); Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). But taken together in the context of this case, these three factors were sufficient to justify an experienced and prudent police officer in acting on his conclusions.[4]

 The three appellants were jointly represented by single counsel appointed pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A. Appellant Olsen points to the following summation on the critical issue of probable cause for appellants' arrest as the denial to him of the effective assistance of counsel:

> COUNSEL: "It seems to me that there should be a little more shown with respect to the basis on which an individual [Olsen] is arrested on the street."
>
> "With respect to the other two defendants, I think the case for holding their arrest was invalidated *is even stronger*, because all the patrolmen knew at that particular time. . . ."
>
> . . . . .
>
> "*There may be some reason for the arrest of Harold Olsen*, but for the arrest of the two other individuals [William and Edward Leach] who are merely in his company, without more, seems to me to be not the type of basis on which a valid arrest can be predicated. . . ." [emphasis supplied]

the testimony of Officer Ross and Alberti, any discrepancy being attributable to lapse of time. Alberti's failure to observe appellants exchanging money does not vitiate Officer Ross' observation of that conduct to support the arrests.

4. Question is raised as to the failure to conform to the requirements of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) in station house identification of William Leach. The court declined to exclude this identification even though the Wade requirements of counsel and lineup were not met, relying on the shortness of time after the

Patently, argument of counsel on the issue of probable cause differentiated between his three clients to the detriment of Olsen. Since the court tried the case on the showing at the suppression hearing, there is a possibility that Olsen may have been prejudiced by the joint representation. *See* Glasser v. United States, 315 U.S. 60, 70, 62 S.Ct. 457, 86 L.Ed. 680 (1942). Better practice would be to provide separate counsel where such a possibility becomes apparent. Morgan v. United States, 396 F.2d 110, 114 (2d Cir. 1968).

Accordingly the judgment of conviction of appellant Harold Olsen is reversed and the case as to him remanded for a new trial. In all other respects the judgment is affirmed.

crime (a matter of minutes). Even if this may be questioned, it does not amount to reversible error in this non-jury trial, where there were positive in-court identifications and testimony of admissions of involvement by all three following *Miranda* warnings. If error, it was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).